The case is number 13-1466, Sofpool LLC against Kmart Corporation. Mr. Costello. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, I'm John Costello. I'm representing plaintiff Sofpool in this matter. Your Honors, could you do me a little bit of leeway and turn to pages 22 to 23 of Sofpool's reply brief? Could I ask you a question before we begin? Yes, Your Honor. The reference to two summer escapes pools here, and almost the entire focus is on the 15-foot by 9-foot by 42-inch pool, but there's a passing reference to a 12-foot, 20-foot, 42-inch pool. Am I correct in assuming that the only one that is accused here is the first one, which is the subject of the discussion in the brief? That's the one at issue here today, Your Honor. There was another pool, we weren't able to find an example of that for analysis. Okay, thank you. Your Honors, are you on pages 22 to 23? Of the green brief? Yeah, the Sofpool's reply brief. Your Honors, I'm going to ask you to take a glance at the two pool designs in those pages, and when you're looking at it, consider all the figures. And in that glance, try to compare those designs as best you can. Now, if you wish, take a second glance with a caveat of don't overanalyze. That's kind of our job, is to overanalyze. Your Honors, I'm done. You want us to look at only these pictures and never the others, right? Yeah, those are the comparisons of all the views with the accused product. Okay, so the other points, which the other side identified, you say are irrelevant, or just we should put them out of our minds? I'm just trying to show you two pictures completely clean of any kind of input from either side. I've actually used the defendant's pictures in that, compared to the same heights, to be fair. Now, I would put to you that you have everything you need to know in your minds factually to decide the proceedings today with regards to substantial similarity. Why did I do that? Well, I could answer it in two questions. Was there a point where your mind decided that the two designs were substantially similar? Your eyes don't lie. Was there a point, this is the second question, when you started to overanalyze and talk yourself out of a perfectly reasonable infringement case? So, put a pin in that on your mental bulletin board. Today, we're analyzing whether the court abuses discretion when it denied a summary judgment. We're saying that there were some good things that the court did and some things that did involve an abuse of discretion. What we feel that the court did well was it gave many indications consistently from the hearing on the summary judgment through to the final judgment in order about the similarity of the designs of the 817 versus the accused product. And we feel that those indications were enough to push this case past the first prong of the ordinary observer test where we need to determine substantial similarity between the two. The underlying reason for having a design patent protection is that there are certain aesthetically appealing designs that serve to contribute to society by creating what new ornamental contributions to aesthetics. And not as standing for the brand or anything like that. And if that's right, if the focus is on aesthetics, why isn't it sufficient as Judge Carlton, I think, thought that if you look at these two things, the aesthetic appeal of them is quite different. One is, I forget exactly his words, but one was kind of low and sleek and the other is, or actually it's different. One was tall and elegant and the other was something else, squat. And that aesthetically, those make different contributions to the universe of aesthetically appealing things. And that all the stuff about how they're both pools and they're round is beside the point because the aesthetic appeal is quite different. Why is that not enough? And that is everything to do with proportions. We're talking about aesthetics because design patent law does not cover functional things. It only covers aesthetic things of industrial designs. I'm not sure if this answers your question, but we believe that the lower court analyzed proportion and isolation, which is one of the dangers cited in Egyptian goddess. If you focus on one element, you can then ignore all the other ornamental novel overall effects, which determine aesthetics of a design. So if the proportions are different, we need to factor those in with all the other novel overall ornamental effects of the two pools to determine ultimately the question of infringement. Because aesthetics goes to proportion, it also goes to all the other novel ornamental effects. Does that answer your question? Well, I guess the thought that I had was that when I read Egyptian goddess, and maybe I need to reread it, but what I took away from that was that if the accused and the patented designs are sufficiently dissimilar on their face, that actually ends the case. That is no infringement. If they're not sufficiently dissimilar, so that you can't say just looking at them, the aesthetic appeal of these things is really unmistakably different, that you then can go on to analyze the matters in more detail to find other reasons why there might be non-infringement, but that you can't make up for the facial dissimilarity by the more refined analysis. And it cuts only one way. That is exactly what Sophocles argued through its briefs. There's two prongs. There's the first prong where, yeah, you're determining these two designs side by side, and you're determining whether they're even in the same ballpark. If they're not aesthetically, then the case ends. If they are not substantially similar. If they're plainly dissimilar is the wording that the cases use. And then one example would be the competitive edge case, which we cite a lot, and that the lower court said that this case was not that case in the hearing. And that's what you seem to be arguing is for a sort of a quick glance test. You ought to take a quick glance at the two and come away with an impression as to whether they're similar or not. Whereas I understand the cases to require, particularly in the case of a pool, which is an expensive item and that people would look at carefully before buying. And in the case of a pool where some of the features are necessarily functional, such as having scruts to prop the thing up, that going to a more detailed analysis, which you call over-analyzing it, is in fact what we're supposed to do. We're supposed to look at the various features. And you're right. We don't take one feature in isolation. But if you look at the features here, in addition to the proportions, there are quite a number of other features which are different. And once you get done with that analysis, don't you come to the conclusion that putting aside the things that are necessarily functional, there are really quite a few differences between these two pools? Well, to get back to your question about the quick glance, we're not arguing for a quick glance. Even though there was the Minka case, we cited that the judge did decide dissimilarity at a first glance. We're advocating for a sufficient glance. And a sufficient glance, yeah, there are differences. We've never not acknowledged that. But we're saying there are so many overall similarities, kind of like the Crocs case, that we have to factor in, along with proportion, to find that the two designs are substantially similar. We can focus on differences, but we can't ignore the things that are plainly the overall effects, as they call them in Crocs, that are similar between the two, and combine together, along with proportion, to form a substantially similar design. That's what we're arguing. The court here really continued, did it not, to apply the ordinary observer test, the classical Gorham test, recognize that in Egyptian goddess, we step back from the point of novelty? So, if this is something in which the ordinary observer would give it a quick glance, as we've discussed, it's one thing. If the ordinary observer looks at it some other way, isn't that still the classical traditional approach to design patterns? And, unless you say it isn't, tell us where the error was in this case. I think the going back to Gorham versus White, way back, like Your Honor noted, back in history, yes. It was way back, but it's been recited over and over. Correct. But they talk about, and I'm paraphrasing, it's sameness of effect upon the eye, sameness of appearance, and giving the attention that a normal purchaser gives. Could you, at a glance, determine the sameness of effect? Absolutely. Could there be other things, other effects that you need to look at a little longer? Sure. But, yeah, the court was consistent as far as reciting the right law, where it was not, and it was also consistent as far as its statements from the hearing into its judgment order, where it said, at first glance, the accused product appears to be within the scope of the 817 design. And not only that, but it punctuated that by then going on to name many of the similar elements, similar overall effects, that were similar between the 817 and accused design. And then it started talking itself out of a perfectly reasonable infringement case, based on, we think, the element of proportion and isolation by over-emphasizing proportion. All right. That's called the deliberative process. Tell us where the error is in the result. The error in the result is that the court, transitioning from the first prong to the second prong, did not execute the law faithfully. I just had a thought, and now I'm lost here, Your Honor. It did not. I took it that your basic grievance with the district court's analysis was that it simply stopped short. It stopped at the first stage of saying, based on the proportions, these are really quite, quite different, and didn't go on to the more detailed analysis, either as to function versus ornament, or as to differences between the claim design and the prior art, to see which of those differences were and were not used by the accused. Correct. And as to Judge Newman's question about where the error was, my thoughts just came back to me. And I don't claim to be a be-all, end-all expert on design patent law, but I think I've looked at all the main cases since Egyptian Goddess, and I've looked at cases going back to Gorham, and I've looked at the district court cases that followed Egyptian Goddess. I've never seen a case that said, initially, the designs appear to be within the bunch of effects that are similar between them, and then completely talk itself out of that position. I think that's an error. That is what I think is what went wrong here. I've never seen a case like that. To echo, I think, something Judge Newman indicated by her, I think, reference to the phrase, the deliberative process, it seems to me judges have to be fairly free to out of those ideas upon fuller analysis. And what counts is the actual opinion that the judge issues in rendering the decision, not the fact that that may have resulted from some testing out of some initial ideas that were then discarded. Yes, Your Honor, but it's a very strange decision. I wouldn't have come here today had the stage of the decision in order, you know what, I'm going to walk back that thing I said about competitive edge. I was wrong there. These designs are completely dissimilar just like competitive edge, and I would not have been here today. Well, but your problem with that is this is summary judgment. It's not a fact finding. If the judge were making fact findings and had engaged in an incorrect analysis, that might be a ground for reversal, but I'm not aware of any case where you have reversed a summary judgment decision because the judge's analysis was wrong, since it's up to us to review it de novo. It's up to you to review it for abuse of discretion on the summary judgment? No, that's not correct. We reviewed the grant of summary judgment de novo. All right, let's hear from the other side. We'll save you a little rebuttal time, Mr. Estella. Thank you, Your Honor. May it please the court. Mr. Gale. The reason that the proceedings in the district court and in this court have focused on the relative proportions of the two pools is because proportions alone can end the inquiry when it comes to a finding of non-infringement of a design patent, and I would submit that a side-by-side comparison of the pool's proportions best captures the overall design appearance. Proportion is not something that is in isolation, like in Crocs, where you have the circles versus the diamonds. Proportion is looking at the entire pool in its entirety, and we're talking about large items. We're not talking about shoes or onion holders. Imagine if you would, two pools would fill the size of this well, 16 feet by 9 feet, and the undisputed evidence reflects that the height of the Summer Escapes pool is proportionately much taller, and the length is proportionately much shorter than the 817 patent pool. Can I ask you something, just if you can clarify this for me? I can't put my finger on it, but I think I'm remembering something in the papers that indicated that the patentee here started with something fairly circular. That feedback or some kind of information about how to fit in yards, he ought to move towards something more like a rectangle and ended up with this. If that's right, everything here depends on, everything here about the proportion would seem to depend on the fact that this is elongated, more elliptical, with even some more or less straight sides. Why in this case is the proportion on which Judge Carlton placed virtually complete reliance, not essentially a reliance on something that's functional as opposed to ornamental? As this court held in Lee versus Dayton-Hudson, proportions are ornamental, and we cited in our brief- Always? Always. We cited eight cases, well I shouldn't say always, nothing I guess is always, but I'm not aware of any case that holds that proportions are not ornamental. We cited eight cases in our- Tell me just what, without knowing those eight cases, in this context, if the reason you have these proportions, these things are basically the same height, they're about 42 inches, right, three and a half feet, and then the only question is how elongated they are. If the reason for the elongated form is to get closer to a rectangle and fit better in yards, make a more efficient use of yard space where these things are going to go, why is that not functional? Forget about cases, why is that not functional? Because you can design proportions in different ways. The test for functionality is that it's necessary for the product or the device to work. For example, the struts in and of themselves are not there, the pool will fall down. However, there are different ways to design the struts. In ours, they splay out much longer, they look differently. And similarly, I would submit that you can have a proportion that is longer, wider, taller, it still would solve the problem that was being addressed, but it would look much different. So that I might say, you know what, I have a long backyard, I want a pool that looks good in terms of the length and the width. Compared to my backyard, I don't want something, let's say I have a 100 foot backyard, I don't want a 30 foot long pool when I could have a 50 foot long pool. So because a 50 foot long pool, let's say, would look better in comparison to my yard than a 30 foot pool. So I think proportions are, to me, are something, when I'm sitting in the lounge chair, and I'm looking out at the pools, and I see the two vastly different proportions here, I'm going to say that that doesn't look good, or I'm going to say, wow, that really fits in nicely. So I would submit that proportions are something, again, pleasing to the eye, and is something that I would think is ornamental. And I'm also having some difficulty in understanding how elongating a pool makes it fit in a backyard, if it has the same circumference at the ends. Oh, well, what they did was they... All right, if the round pool won't fit in the yard, you can't make it fit by elongating it. No, so if you had a yard that's, well, just hypothetically, it fits on the side, but it doesn't, it fits on the length and the width, but doesn't fit on the other side, because it's a narrow yard. So it would take in the sides, but not the center circumference of the circle. And so that's what they were talking about. So... Or you're going to get the same volume, but using a different area. Right. So in other words, like on this... Well, I don't want to think off the top of my head, but that's what they did. They couldn't fit all of it in the pool. Maybe they could get the end in, and then the center part didn't make it. So they would make everything where the end half would be the widest part of the pool. And that was the chatter that led the patentee to create an oval pool. But I would submit that, as we showed in our briefs, and the proportions were not contested by Softpool. They did not challenge the measurements. And I would submit that that's enough. Applying at the end of the day, at the last sentence of Egyptian goddess, the purchaser of the accused product would not be deceived into believing that he was buying the patented device. And as we showed in... Council asked you to look at pages 22 to 23. And first of all, there's a fatal error in that analysis, and that is the first step of Egyptian functionality. And that goes back to the odds-on case. He was not asking you to factor out functionality. He was just asking you to look at the pictures. But if you factored out functionality and then looked at what was left, almost every element is different between the accused product and the 817 patent. What we saw in the appellate's opening brief is, for the first time, they argued that the only functional aspect was that this was a vessel to hold water, and that all of the 817 patent pool's elements were ornamental, having no functional purpose. Well, that argument fails procedurally and substantively. It fails procedurally because it was the first time it was raised for the first time on appeal. If you did a word search of the joint appendix, you will not find the word vessel. But it fails substantively because I think this is really important. The undisputed record, based on the testimony primarily of the patentee, is that the general configuration of the 817 patent pool is functional. We're not talking about a design on a soup handle. We're talking about a pool that has all these functional elements that require it to work. As I said, the straps are functional in and of themselves because the pool will fall down without the straps. The straps are functional because they hold the struts to the pool. The bulging angles in the end walls are functional because they're needed to withstand the water pressure, and otherwise the pool will tip over. And the top collar that's filled with air is functional because it holds the water in the pool. And the seams are functional because they hold the various parts of the pool together. So the only visual similarities between the two pools that you were asked to look at on pages 22 and 23 of the reply brief are the unprotected functional elements of the 817 pool and the Summer Escapes pool. So Softpool has never challenged the record evidence that established why these general elements are functional. And in all the briefs, Softpool has never factored out the functional aspects of these elements as required by Odds-On and Richardson v. Stanley Works. So I would submit that the only similarity between the pools is that they have the same functional elements, but that factoring out process has never been conducted in this case. And really, if you read what we heard today and if you read the briefs, what Softpool really is claiming here is they would love to have a utility patent in a self-rising, soft-sided pool because when you don't engage in the functioning out process, you're seeking to cover the world of self-rising pools. But despite the existence of the various functional elements, we made a detailed showing in our brief that those functional elements still had ornamental aspects to them. So I mentioned the struts, the straps, and if you look at one of our pictures from the end view, you'll see how the struts lay out twice as far as the 817 patent. The straps are wider and longer. And so I would say that contributes to the overall ornamental difference between the two pools. So I also want to point out that contrary to what has been argued, the district court never made a determination of substantial similarity. What the district court did, as has been discussed here today, is at first glance, it said, well, they both have struts. They both have bulging ends and walls. They both have straps. And then, therefore, it appears to be within the scope. Now, being within the scope is not the same as substantially the same so that an ordinary observer would be deceived into believing one is the other. That's just the beginning of the analysis. But then the judge said, okay, so before I engage in all this functioning out element that Mr. Gale is now talking about, why don't I just take something that really strikes me as being different, and I'm going to look at the proportions. And the way he described them, he wasn't saying it's a squat pool. He's saying it looked like a squat pool as compared to the summer escape school, which is tall and elegant looking. And to me, saying something is squat and long versus tall and elegant, that almost is a definition of this ornamentality and aesthetics as opposed to functionality. But here we have, as has been noted, a very, we're not talking about an onion holder or a pair of shoes. We're talking about a very expensive item. And the ordinary observer is going to be looking at all aspects of it. It's going to be looking at the size, the shape, the design, safety, and the quality of the pool. The ordinary observer is not going to make a first glance like you're in the supermarket and pick up the onion holder. The ordinary observer is going to take his or her time and looking at all aspects of it, particularly given that the genesis of this pool is that it needed to fit into an ordinary pool. And the ordinary observer is going to make sure that if the struts play out too long, there's going to be enough space for it to stay in the pool, to fit in the backyard. I could say more, but I think I've made my points. If the panel has any questions. Any more questions? Thank you, Mr. Gale. Thank you, Your Honor. Mr. Castello. As far as the discussion that Mr. Gale gave as to functionality, we've never denied functionality in the elements of the 817 design. What we've always contended is this is an industrial design and it has functional aspects. If it wasn't functional, it would be a subject of copyright. So this is an industrial design. We've always contended that side by side there's functional and ornamental qualities. And so that's basically the heart of what I'm trying to say is we've never denied that there's functional aspects in the patent at any time. We've also handled the functionality issues with regards to the case of AVEA versus LA Gear, which says that if you can show alternative designs for something, then it's not purely functional. It has an ornamental quality and can then be used as part of the ornamental analysis and design patent infringement. That's all in the briefs, and I'm not going to repeat myself here, but that part is pretty much covered there. In closing, I just want to talk about this, go back to this issue of proportionality and the defense put up an argument in the lower court that it seemed to be taken by that the 817 was a styrofoam bowl and the accused product was a styrofoam cup, that the proportions were that stark, that they were so different that they're completely dissimilar. But if you read the court's decision, it kind of said, yeah, the designs appear to be substantially similar, but one appears to be the proportion of a styrofoam cup and one appears to be the proportion of a styrofoam bowl. But if you take that out, then why did the lower court ever say that the accused design appeared to be within the scope of the 817 patent at all? And I'll submit to you that the proportions were not as stark as the lower court put them up to be if it gave the decision that it did. If the differences are really that stark a proportion in this case, then the first prong would be knocked out immediately, but the lower court gave indications that that was not the case. So this styrofoam cup versus bowl thing is not representative of the case here. In closing, we'd like you to find or overturn the findings of the lower court and find that the 817 patent is infringed. And finally, I have a few seconds left. I want to thank you for allowing Softpool to air its case before you today. Thank you, Mr. Costello and Mr. Gale. The case is taken under submission. That concludes the argued cases for this morning. All rise. The honorable court is adjourned on a count of eight to eight.